IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TECUMSEH POULTRY LLC, | |
| Plaintiff, | 4:12CV3032 |
| vs. | |
| PERDUE HOLDINGS, INC. and PERDUE FARMS, INC., | MEMORANDUM AND ORDER |
| Defendants. | |

    This matter is before the Court on the motion to dismiss (filing 23) and motion for oral argument (filing 29) filed by defendants Perdue Holdings, Inc. and Perdue Farms, Inc. (collectively, "Perdue"). The Court has considered the parties' briefs (filings 24, 26, 27, and 30) and indexes of evidence (filings 25 and 28). For the reasons discussed below, the Court will deny Perdue's motion to dismiss and motion for oral argument.

## I. FACTUAL BACKGROUND

    The following facts are drawn from Tecumseh's complaint (filing 1) and the materials submitted by Perdue (filing 25). For purposes of Perdue's motion to dismiss, Tecumseh's factual assertions are accepted as true. *See Bell Atl. Corp v. Twombly*, 550 U.S. 544, 572 (2007).

    Tecumseh is in the poultry business. It processes chickens and distributes its chicken products in all 50 states and internationally. Filing 1 at ¶ 7. Tecumseh owns several federally registered marks associated with its "Smart Chicken" products. Filing 1 at ¶ 8. These marks include, among others: "Smart Chicken," "Smart Chicken (with design)," "Taste the Air Chilled Difference," "Smart Chicken Gourmet Chicken Franks," "Organic Smart Chicken," "A Higher Degree of Fresh Chicken," and "When you Think Chicken . . . Think Smart!" Filing 1 at ¶ 8. Tecumseh also has two registered marks for the trade dresses for its "Smart Chicken MBA Brand." Filing 1 at ¶ 8. The use of a green or blue Styrofoam tray is claimed as a feature of each. Filing 1 at ¶ 8. Tecumseh's earliest use of the Smart Chicken mark dates back to at least August 1995, and its earliest registration to August 1997. Filing 1 at ¶ 8. The trade dress marks are the most recent, first used in April 2007 and registered in January 2009. Filing 1 at ¶ 8. The other marks were

first registered and used at various dates in between. Filing 1 at ¶ 8. Tecumseh has used its Smart Chicken marks continuously and alleges that it has "has enjoyed tremendous commercial success" using the marks throughout the United States and internationally. Filing 1 at ¶ 9. It has expended "considerable effort and expense" to develop and extensively advertise the Smart Chicken brand and its various products, in Nebraska and throughout the United States. Filing 1 at ¶ 11.

Defendant Perdue is a food and agricultural company that is also in the poultry business, with several lines of chicken products that it sells in Nebraska and throughout the United States. Filing 1 at ¶¶ 6, 13–16. In July 2007, Perdue applied to use the phrase "Simply Smart" in connection with the sale of certain chicken products, and the application was published for opposition in November 2007. Filing 25-2 at 4. Perdue began to use the Simply Smart mark as early as July 2008. Filing 1 at ¶ 13; filing 25-2 at 3. On June 30, 2009, Perdue obtained federal trademark registration for the use of Simply Smart in selling certain poultry products. Filing 1 at ¶ 13. Perdue uses the phrase regularly in its advertising and on its website. Filing 1 at ¶ 19.

In January 2011, Perdue applied to expand the mark's registration for use with numerous other prepared food products, including various meat products, prepared meals, frozen vegetables, meat pies, and macaroni and cheese. Filing 1 at ¶ 14. This application is currently pending before the Patent and Trade Office's (PTO) Trademark Trial and Appeal Board (TTAB). *See* filing 25-3 at 4–6. In November 2011, Tecumseh filed an opposition in the TTAB proceeding. *See* filing 25-3 at 4–6. After filing its opposition, Tecumseh declined to furnish discovery and obtained a suspension of the TTAB proceedings pending disposition of this suit. *See* filing 25-3 at 4–6.

Tecumseh alleges that Perdue adopted the Simply Smart mark with full knowledge of Tecumseh's Smart Chicken mark. Filing 1 at ¶ 18. Perdue has also used the phrase "Taste the Perdue Difference" in the sale of its chicken products, which Tecumseh contends is deceptively similar to "Taste the Air Chilled Difference." Filing 1 at ¶ 15. Perdue's wholly-owned subsidiary, Coleman Natural Foods, sells fresh, organic chicken products in green Styrofoam trays. Filing 1 at ¶ 15. Tecumseh claims this is deceptively similar to its registered trade dress that features a green Styrofoam tray. Filing 1 at ¶ 15. Tecumseh alleges that these practices, and especially Perdue's use of its Simply Smart mark in the sale of chicken products, are likely to cause confusion among consumers as to the source of sponsorship or Perdue's products. Filing 1 at ¶ 24.

This forms the basis for all five claims for relief in Tecumseh's complaint: (1) trademark infringement under the Lanham Act, 15 U.S.C. §

1114(a); (2) trademark dilution in violation of 15 U.S.C. § 1125(c); (3) violations of Nebraska's Uniform Deceptive Trade Practices Act ("NUDTPA"), Neb. Rev. Stat. §§ 87-301 *et seq.*; (4) unfair competition and false advertising, in violation of 15 U.S.C. § 1125(a) and Nebraska common law; and (5) violations of Nebraska's Consumer Protection Act (NCPA), Neb. Rev. Stat. §§ 59-1601 *et seq*. Filing 1 at ¶¶ 22–40. Tecumseh requests various forms of injunctive relief and seeks a declaration that Perdue's use of its Simply Smart mark infringes upon Tecumseh's superior rights in its Smart Chicken marks. Filing 1 at 9–11.

## II. STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The plaintiff must plead factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 555.

The Court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 555–57. In contrast to factual allegations, courts are not required to accept as true a plaintiff's legal conclusions. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, that if accepted as true, states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *Twombly*, 550 U.S. at 556.

When considering a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider exhibits attached to the complaint and materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti v. City of Golden Valley*,

666 F.3d 1148, 1151 (8th Cir. 2012). The Court may also take notice of public records. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007); *see also HTC Corp. v. IPCom GmbH & Co., KG*, 671 F. Supp. 2d 146, 151 n.3 (D.D.C. 2009) (taking notice of Patent and Trade Office materials).

### III. ANALYSIS

Perdue's motion raises several grounds for dismissal, and Tecumseh has already consented to some pruning of its claims for relief. Tecumseh has agreed to voluntarily dismiss its claim for trademark dilution in its entirety. Tecumseh has also agreed to dismiss its claims under the NUDTPA and NCPA, to the extent they are based upon false statements or misrepresentations by Perdue. Moving to the contested portions of Perdue's motion to dismiss, Perdue argues that all of Tecumseh's remaining claims are variations of trademark infringement, and must be dismissed because Tecumseh has failed to plead a plausible likelihood of consumer confusion. Next, Perdue contends that Tecumseh's claim under the NCPA should be dismissed for failure to satisfy the statute's "public interest" requirement. Finally, Perdue argues that all of Tecumseh's claims are barred by the doctrine of laches. The Court will address each argument in turn.

### A.   Likelihood of Confusion

As pled, all of Tecumseh's claims depend upon a showing that Perdue's use of the Simply Smart mark is likely to cause confusion. Likelihood of confusion is the hallmark of any trademark infringement claim, and is necessary to prevail on claims for trademark infringement under § 1114(a) and unfair competition under § 1125(a). *Minnesota Min. & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1308 (8th Cir. 1997); *see also A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 n.5 (3d Cir. 2000). To prevail on a claim of trademark infringement under 15 U.S.C. § 1114(a), a plaintiff must establish that it owns a valid, protectable mark and that there is a likelihood of confusion between its mark and the defendant's mark. [1] *B & B Hardware, Inc. v. Hargis Industries, Inc.*, 569 F.3d 383, 389 (8th Cir. 2009). Similarly, § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), which offers protection to marks regardless of federal registration, prohibits the use of a mark in connection with goods or services in a manner that is likely to cause confusion as to the source or sponsorship of the goods or services. 15 U.S.C. § 1125(a)(1); *see also Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir.

---

[1] Perdue does not dispute that Tecumseh owns the Smart Chicken marks or their validity. Also, at least some of Tecumseh's marks have become incontestable. *See* 15 U.S.C. §§ 1058, 1065.

2005). Conduct causing a likelihood of confusion also constitutes a "deceptive trade practice" under the NUDTPA. *See* Neb. Rev. Stat. § 87-302(a)(2) and (3). Finally, the NCPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Neb. Rev. Stat. § 59-1602. Tecumseh has not specified *how* Perdue is alleged to have violated the NCPA, but the only apparent basis is Perdue's conduct which has allegedly created a likelihood of confusion.

The Court finds that Tecumseh's allegations of likely confusion, while far from compelling, are plausible on their face. *Iqbal*, 556 U.S. at 678. For violations of the Lanham Act, the Eighth Circuit employs a six-factor test to evaluate whether there is a likelihood of confusion, including, (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to "pass off" its goods as those of the trademark owner; (5) incidents of actual confusion; and, (6) the type of product, its cost, and conditions of purchase. *Sensient Technologies Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 (8th Cir. 2010). No factor standing alone is dispositive. *Id.* The Court will use these factors to evaluate all of Tecumseh's claims, whether under the Lanham Act or Nebraska statutes or common law. *See Sensient Technologies*, 613 F.3d at 763 n.3.

As these factors make clear, assessing likelihood of confusion is a fact-intensive inquiry. *Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.*, 466 F.3d 630, 634 (8th Cir. 2006). So, it is hardly surprising that few trademark cases are resolved on motions to dismiss.[2] *See, e.g.*, *Mastro's Restaurants LLC v. Dominick Group LLC*, 2012 WL 2091535, at *5–6 (D. Ariz. 2012); *Virginia Polytechnic Institute and State University v. Hokie Real Estate, Inc.*, 2011 WL 926862, at *8, 100 U.S.P.Q. 2d 1199, 1207 (W.D. Va. 2011). A motion to dismiss would be appropriate, for example, where the goods are unrelated as a matter of law, and thus no confusion is likely. *See, e.g.*, *Toho Co., Ltd. v. Sears, Roebuck and Co.*, 645 F.2d 788, 790–91 (9th Cir. 1981) (holding dismissal appropriate because goods at issue—garbage bags versus literary works and toys—were unrelated as a matter of law and the parties used different marketing channels). Such is not the case here. The six factors above are generally too fact-dependent to offer much guidance at this point. The Court has nonetheless reviewed the factors, and while Tecumseh's hill to

---

[2] While difficult to resolve on the pleadings, likelihood of confusion is, in some circumstances, amenable to resolution at the summary judgment stage. *See, e.g.*, *Sensient Technologies*, 613 F.3d at 769 (granting summary judgment because no reasonable jury could find a likelihood of confusion).

recovery may be steep, the factors do not weigh so strongly against Tecumseh to mandate dismissal, nor do they show Tecumseh's claims to be implausible.

**1.     The Strength of the Owner's Mark**

A strong and distinctive trademark is entitled to greater protection than a weak or commonplace one. *Sensient Technologies*, 613 F.3d at 763. Marks may fall into one of four categories: generic, descriptive, suggestive, or arbitrary or fanciful. *Id.* On this spectrum, an arbitrary or fanciful mark is entitled to the highest level of protection, while a generic mark is afforded no trademark protection. *Id.* Which category a mark falls into is question of fact. *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1326 (8th Cir. 1984); *see also Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).

Before discussing the strength of the Smart Chicken mark, some clarification is in order. Tecumseh owns several trademarks related to its Smart Chicken products, beyond the phrase "Smart Chicken." These include "Taste the Air Chilled Difference" and a registered trade dress featuring the use of a green Styrofoam tray. In its complaint, Tecumseh refers to all of its Smart Chicken marks collectively, and alleges broadly that Perdue's use of the Simply Smart mark constitutes infringement and is likely to cause confusion. Filing 1 at ¶ 8. But Tecumseh also specifically alleges that Perdue has used the phrase "Taste the Perdue Difference" in conjunction with its sale of chicken products, and that Perdue markets fresh, organic chicken products through its subsidiary Coleman Natural Foods, using a green Styrofoam tray. Filing 1 at ¶ 15.

In their briefs, however, the parties have focused on the "Smart Chicken" mark itself (as opposed to the marks for "Taste the Air Chilled Difference," or "Smart Chicken Gourmet Chicken Franks"). The Court will use the phrase "Smart Chicken" in the narrower sense, to refer only to the marks for "Smart Chicken" (registration numbers 2,090,475 and 2,947,154). Filing 1 at ¶ 8. The parties have not analyzed the other marks under the six-factor test. In particular, while the parties have addressed the strength of the Smart Chicken mark, they have not discussed whether "Taste the Air Chilled Difference" or Tecumseh's green trade dress mark are strong marks. Nor have they discussed these marks' similarity to Perdue's corresponding marks, under the second factor. So, the Court will not review the strength of these marks at this time, and will address their similarity only briefly.[3]

The parties agree that the Smart Chicken mark is not fanciful or generic. Perdue argues it is either descriptive or suggestive, and Tecumseh claims it is suggestive or arbitrary. The Court finds that, on the facts alleged

---

[3] The remaining four factors focus more on the products themselves, so the analysis may ultimately overlap to some extent.

- 6 -

by Tecumseh, the Smart Chicken mark is at least suggestive. A mark is descriptive if conveys an immediate idea of the ingredients, qualities, or characteristics of the goods. *Frosty Treats Inc. v. Sony Computer Entertainment America Inc.*, 426 F.3d 1001, 1005 (8th Cir. 2005) (holding that the phrase "Frosty Treats" is "at best, descriptive" when used in conjunction with frozen desserts). A suggestive mark, on the other hand, requires the consumer to use his or her imagination, thought, and perception to reach a conclusion as to the nature of the goods. *Id.* How a particular word has been used and how it has been understood by the public is a question of fact. *WSM, Inc.*, 724 F.2d at 1325. Even so, the Court does not believe that the "smart" in Smart Chicken could plausibly be thought to refer to the actual intelligence of Tecumseh's chickens. The term "smart" most likely refers to the processes used with respect to the chickens or implies that consumers are making a smart choice in purchasing Tecumseh's poultry products. But because the phrase is coupled with a picture of a chicken in a graduation cap (see below, part B), "Smart Chicken" does not immediately convey an idea regarding the characteristics of Tecumseh's poultry. Rather, consumers must make a small mental leap to reach this conclusion. Because the mark is suggestive, it is entitled to *some* protection, and this factor weighs slightly in Tecumseh's favor.

**2.    The Similarity of the Owner's Mark and the Alleged Infringer's Mark**

To assess the similarity of the parties' marks, the Court evaluates the impression that each mark in is likely to have on a purchaser exercising the attention usually given by purchasers of such products. *Sensient Technologies*, 613 F.3d at 764. The Court does not compare the component parts of each mark, but the overall impression of each mark as a whole. *Id.* The fact that both marks use identical, or even dominant words in common does not automatically mean that the two marks are similar. *Id.* The Court considers the marks' visual, aural, and definitional attributes as well as the trade dress of each product, to determine if the "total effect conveyed by the two marks is confusingly similar." *Id.*

The Court begins with the meanings conveyed by the marks themselves. Perdue argues that the marks will not cause confusion because "Simply Smart" and "Smart Chicken" will evoke very different meanings to consumers. Perdue claims that "Simply Smart" implies that its products are simple or easy to prepare and a smart choice. In contrast, Perdue argues, "Smart Chicken" implies that Tecumseh's chickens are smarter. This argument is without merit. First, how a particular word has been used and how it has been understood by the public is a question of fact. *WSM, Inc.*, 724 F.2d at 1325. Tecumseh's complaint does not allege what consumers

- 7 -

understand the Smart Chicken mark to mean, and Perdue is not free to simply make up a meaning. Second, as discussed above, it strains plausibility to believe that anyone would actually believe Tecumseh's chickens are somehow smarter. It is much more likely that consumers will perceive they are making a "smart" choice in purchasing Tecumseh's products, or that Tecumseh uses "smart" (i.e., healthy or organic) processes to raise its chickens. Considered apart from their packaging, the marks themselves may convey somewhat similar meanings. This weighs in Tecumseh's favor.

But any similarity in the marks themselves is offset by the visual attributes of the marks and their accompanying trade dress. Perdue has submitted copies of the packaging and labels for some of its Simply Smart chicken products and for some Smart Chicken products.[4] The samples of packaging before the Court do not represent the totality of the parties' use of their respective marks, nor the entirety of the packaging or products relevant to this dispute. For example, Tecumseh has alleged that a subsidiary of Perdue uses a green Styrofoam tray similar to Tecumseh's registered trade dress, but this is not before the Court. And there may be other packaging that will come before the Court on summary judgment. So, any review of the packaging before the Court is only a preliminary and partial foray into the issue of similarity. With those caveats in mind, the packaging before the Court is visually quite distinct, and weighs strongly against a finding of confusion. *Compare* figure no. 1 (sample of Perdue's packaging) *with* figure no. 2 (sample of Tecumseh's packaging).

---

[4] The Court may consider these materials without converting the motion to one for summary judgment. *See*, Fed. R. Civ. P. 12(d); *Mattes*, 323 F.3d at 697 n.4; *Ashanti*, 666 F.3d at 1151. The copies of Smart Chicken's packaging (filing 25-4 at 1, 6–9) are matters of public record, taken from the United States Patent and Trade Office's Trademark Application and Registration Retrieval System report for Tecumseh's Smart Chicken mark. *Levy*, 477 F.3d at 991; *HTC Corp.*, 671 F. Supp. 2d at 151 n.3. The Simply Smart packaging submitted by Perdue is taken from its website. This packaging is "necessarily embraced by the pleadings" because it forms part of the use of the Simply Smart mark that Tecumseh alleges is confusingly similar to its Smart Chicken mark and packaging. *Ashanti*, 666 F.3d at 1151. Perdue has also included a sample of its old packaging. *See* filing 25-2 at 11–12. But the parties have not identified any reason that the old packaging is relevant at this time.





**Fig. no. 1.** A representative sample of the current packaging for Perdue's Simply Smart product line. Filing 25-5 at 4.

**Fig no. 2.** Tecumseh's Smart Chicken label. Filing 25-4 at 7.

The Simply Smart products are packaged in white bags with green borders. Filing 25-5 at 4. In the top center is the Perdue house mark, next to a picture of an idyllic farmhouse in front of several chicken coops. Filing 25-5 at 3–4. Below this, printed in large letters, is "Simply **Smart**," and underneath, in smaller print, "Simple **Ingredients**, Simply **Nutritious**, Simply **Tastes Great**." Filing 25-5 at 3–4. In the center of the bag is a rectangle with the specific type of chicken product listed, e.g., "Lightly Breaded Chicken Chunks," with a different color for each type of chicken product. Filing 25-5 at 3–4. The bottom half of the package contains a photograph of the product, served on a plate with vegetables or a garnish. Filing 25-5 at 3–4.

The overall impression conveyed by Tecumseh's Smart Chicken label is quite different. The central feature is a drawing of a chicken, in profile, wearing a graduation cap. Filing 25-4 at 7. The drawing is contained in a blue-outlined wedge shape. Filing 25-4 at 7. Different products feature different background colors for the logo, including blue and brown. Filing 25-4 at 6–7. Above the logo, in large red letters, "SMART CHICKEN" is printed, and above this, in small print, is a tag reading "MBA BRAND." Filing 25-4 at 7. Below the central logo is printed "Taste The Air Chilled Difference." Filing 25-4 at 7. Other than the words "Simply Smart" and "Smart Chicken," the packaging samples have essentially no similarities. Even the similarity between the marks themselves is reduced by the repeated use of the word "simple" on Perdue's products. As it stands, this factor weighs in Perdue's favor.

However, the Court has not yet seen the entire picture. Tecumseh has alleged that Perdue has used green Styrofoam similar to its own and the phrase "Taste the Perdue Difference." Tecumseh has also alleged that Perdue uses the phrase "Simply Smart Chicken" in its advertising and on its website. This phrase is one step closer to "Smart Chicken." These allegations *might* increase the possibility of confusion. In short, while the materials before the Court weigh in Perdue's favor, Tecumseh has indicated the existence of other matters that may affect this finding.

### 3.   The Degree of Competition Between the Marks

If two companies' products are closely related, customers are more likely to be confused. *Sensient Technologies*, 613 F.3d at 766. This does not mean the goods must be in direct competition to cause confusion. *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 679 (7th Cir. 2001). Rather, the question is whether consumers are likely to believe the goods to be related, i.e., put out by a single producer. *Id.*

Fresh chicken and prepared (frozen) chicken products are closely related, and likely in competition—but the degree of that proximity and competition is a question of fact not amenable to resolution at this time. For that matter, the Court does not have a clear picture of the entire range of each company's product lines. At this point, all that can be said is that it is at least plausible that the products are closely related, and this weighs in Tecumseh's favor.

### 4.   Perdue's Intent to Pass Off Its Goods as Tecumseh's

Proof of bad intent is not required for success in an infringement or unfair competition claim, but the absence of such intent is a factor to be considered. *Sensient Technologies*, 613 F.3d at 766. But knowledge of another's product and the intent to compete are not equivalent to an intent to mislead and cause confusion. *Id.* Tecumseh has not alleged that Perdue

adopted the mark with the intent to mislead, only that Perdue knew of Tecumseh's registered mark before adopting the Simply Smart mark. However, at this early stage, this does not detract from Tecumseh's case.

## 5. Incidents of Actual Confusion

Showing incidents of actual confusion is an effective means of proving a likelihood of confusion, but the plaintiff is not required to bring forth such incidents to succeed. *Id.* at 768. Tecumseh has not alleged any incidents of actual confusion. After discovery, Tecumseh's inability to produce such incidents might weigh against a finding of likely confusion. But for now, like the previous factor, this does not affect the Court's analysis one way or another.

## 6. The Type of Product, Its Cost, and Conditions of Purchase

This factor examines the degree of care expected of customers. *Id.* at 769. To consider this factor, the Court stands in the shoes of the "ordinary purchaser," buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying this class of goods. *Id.* Tecumseh has not alleged the degree of care customers use in purchasing it or Perdue's products. But it is quite plausible that people shopping for groceries do not always exercise the highest degree of care. This is especially true with Perdue's Simply Smart line of prepared products, which emphasize simplicity and convenience. But discovery is likely to substantiate this one way or another. Given the general nature of the products, this factor tilts slightly in Tecumseh's favor.

## 7. Presumption of Dissimilarity

Finally, Perdue argues that because its mark is federally registered, it is presumptively dissimilar from other registered marks, including Tecumseh's, and therefore not likely to cause confusion. It is true that in a civil action for trademark infringement, registration is prima facie evidence that the registrant owns a *valid* mark. 15 U.S.C. §§ 1115(a) and 1057; *see also, Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 12–13 (D.C. Cir. 2008); *America Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 817 (4th Cir. 2001).[5] This typically comes into play as evidence that the mark is not generic (and thus registrable). *See, e.g.*, *WSM, Inc.*, 724 F.2d at 1326. And it is true that, over 50 years ago, the Eighth Circuit held that

---

[5] Cases refer interchangeably to *prima facie evidence* of validity and a *presumption* of validity. *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 782–83 (9th Cir. 2002) (noting that the concepts are essentially equivalent in this context).

> [W]hen a mark is registered upon the principal register . . . the presumption arises that the statutory prerequisites to its valid registration have been met, i.e. (1) <u>its dissimilarity to other registered marks for similar goods</u>, (2) its secondary meaning, (3) its "ownership" by the applicant, and (4) the applicant's exclusive right to use the trade-mark in commerce in connection with the goods specified.

*Curtis-Stephens-Embry Co. v. Pro-Tek-Toe Skate Stop Co.*, 199 F.2d 407, 413 (8th Cir. 1952) (emphasis supplied); *see also, Iowa Farmers Union v. Farmers' Educational and Co-op. Union*, 247 F.2d 809, 817 (8th Cir. 1957); 15 U.S.C. § 1052(d) (mark may be refused registration if it so resembles another registered mark as to be likely to cause confusion with regard to applicant's goods).[6]

But only one case of a more recent vintage has adopted Perdue's argument that the presumption extends not only to distinctiveness (i.e., that the mark is not generic) but also to dissimilarity from other registered marks. *See Pilot Corp. of America v. Fisher-Price, Inc.*, 501 F. Supp. 2d 292, 302–03 (D. Conn. 2007). And other decisions cast doubt on the continued vitality of Perdue's asserted presumption. *See Marketing Displays, Inc. v. TrafFix Devices, Inc.*, 200 F.3d 929, 934 (6th Cir. 1999) *rev'd on other grounds*, 532 U.S. 23 (2001) (rejecting presumption that there is no likelihood of confusion based upon registration alone); *see also, Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 714–15 (3d Cir. 2004); *A & H Sportswear*, 237 F.3d at 221 (although an initial PTO determination by an examining attorney may be considered, it need not be given weight when the PTO attorney did not review all the evidence available to the District Court).

The Court views the PTO's determinations with deference, given its expertise in this area. But there is no evidence that the PTO actually compared Simply Smart to any of Tecumseh's marks, or even that the same examining attorney reviewed both Perdue and Tecumseh's marks. With that said, this Court is bound by the Eighth Circuit, and the Circuit has not given any indication that *Curtis-Stephens-Embry* is no longer good law. So, the Court will consider the registration of the Simply Smart mark as prima facie evidence that it is dissimilar from Tecumseh's registered marks.

**8.     Weighing the Factors and the Presumption**

---

[6] Since the 1950s, nothing in the relevant statutes has changed in a way that would disturb this presumption. *Compare* 15 U.S.C. §§ 1052, 1057, and 1115 (1952) *with* 15 U.S.C. §§ 1052, 1057, and 1115 (West 2012).

Tecumseh has not set forth facts showing a *strong* likelihood of confusion. But to survive a motion to dismiss, Tecumseh need only plead facts from which the Court can infer a plausible likelihood of confusion. The Court finds that Tecumseh has met this burden. Perdue's evidence to the contrary—in the form of a presumption of dissimilarity—does not disturb this preliminary finding. Accordingly, the Court will deny Perdue's motion to dismiss.

## B.    The NCPA's "Public Interest" Requirement

Perdue argues that Tecumseh's claims under the NCPA should be dismissed for failure to plead facts alleging a "public impact." The Court finds otherwise. The NCPA states broadly that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." Neb. Rev. Stat. § 59-1602. The Nebraska Supreme Court has held that, to be actionable under the NCPA, the act or practice at issue must have an impact upon the public interest. *Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136 (Neb. 2000). This requirement flows from the NCPA's definition of "trade and commerce," which is limited to "the sale of assets or services and any commerce *directly or indirectly affecting the people of the State of Nebraska*." § 59-1601(2) (emphasis supplied).

The NCPA does not apply to "isolated transactions between individuals" that have no impact on consumers at large. *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 36 (Neb. 2004). In *Nelson*, the NCPA was held not to apply to a single transaction between the buyer and seller of a car. *Nelson*, 605 N.W.2d at 142. At the other end of the spectrum are cases alleging "a pattern of calculated conduct intended to defraud numerous citizens of this state." *Eicher v. Mid America Financial Inv. Corp.*, 748 N.W.2d 1, 12 (Neb. 2008). This case falls somewhere in between.

Tecumseh has alleged that Perdue's conduct has caused a likelihood of confusion among consumers, in Nebraska and elsewhere. Filing 1 at ¶¶ 6, 24, 39. Tecumseh has also alleged that Perdue regularly advertises and markets its Simply Smart products in Nebraska. Filing 1 at ¶ 6. This and the sale of the Simply Smart products qualify as commercial activities "directly or indirectly affecting" the Nebraska public. § 59-1601(2).

Tecumseh's NCPA claim (like all of its claims) depends upon a showing of likely consumer confusion. This also implicates the public interest. *Cf. CAE, Inc.*, 267 F.3d at 672 (trademark law protects "both consumer confidence in the quality and source of goods and businesses' goodwill in their products"); *see also*, *Davidoff & Cie, SA v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) (the public interest is served by preventing consumer

confusion); *Norman M. Morris Corp. v. Weinstein*, 466 F.2d 137, 140 (5th Cir. 1972). In short, the Court finds that Tecumseh's claim under the NCPA satisfies the statute's public interest requirement.

## C. The Doctrine of Laches

Perdue's Simply Smart mark was published for opposition in November 2007, and first used as early as July 2008. Filing 1 at ¶ 13; filing 25-2 at 3–4. According to Perdue, Tecumseh did not object to Perdue's use of the Simply Smart trademark until November 2011, when Tecumseh filed an opposition in the pending TTAB proceeding. *See* filing 25-3 at 4–6. Perdue argues that this delay was unreasonable and urges the Court to find Tecumseh's suit barred by the doctrine of laches.

A defendant must establish three elements to successfully assert laches as a defense: (1) the plaintiff delayed in asserting a right or a claim; (2) the delay was not excusable; and (3) the delay caused undue prejudice to the defendant. *Roederer v. J. Garcia Carrion, S.A.*, 569 F.3d 855, 859 (8th Cir. 2009). Laches is an equitable defense and its application depends heavily upon the facts of a particular case. *Id.* at 858. The limited record available at this stage, however, only shows the existence of a delay. It remains to be seen whether that delay was excusable and caused undue prejudice, as those determinations require evidence not before the Court at this time. Accordingly, the Court will deny Perdue's motion to dismiss Tecumseh's claims as barred by laches.

## IV. CONCLUSION

The Court has reviewed Tecumseh's complaint and considered the documents submitted by Perdue. The Court finds that the facts alleged in Tecumseh's complaint support at least a plausible likelihood of confusion. Tecumseh's claim under the NCPA satisfies the statute's public interest requirement. Finally, without additional evidence, the Court will not determine whether Tecumseh's claims are barred by laches.

The Court has its initial reservations about whether Tecumseh will ultimately be able to prove a likelihood of confusion. The Court also recognizes Perdue's concern that Tecumseh has unduly delayed bringing this action. But these matters cannot be resolved on a motion to dismiss.

Accordingly,

IT IS ORDERED:

1. Perdue's motion to dismiss (filing 23) is denied; and

2. Perdue's motion for oral argument (filing 29), at least at this juncture, is denied.

Dated this 24th day of July, 2012.

BY THE COURT:

John M. Gerrard
United States District Judge

- 15 -